# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5250 | **DATE** | 10/3/2003 |
| **CASE TITLE** | Board of Education of Community Consolidated School District No. 168, et al. vs. Republic Franklin Insurance Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment [8-1] is denied while defendant's motion for summary judgment [10-1] is granted. Judgment entered in favor of the defendant. All future dates, including trial date of 10/20/03, are stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | OCT 0 6 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | | 21 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 OCT -3 PM 3:40 | 10/3/2003 date mailed notice | |
| MD courtroom deputy's initials | | FILED FOR DOCKETING ED-1 | MD mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BOARD OF EDUCATION OF COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 168, COOK COUNTY, ILLINOIS, THOMAS RYAN in his Individual capacity and as Superintendent of Community Consolidated School District No. 168, Cook County, Illinois, and RUDY WILLIAMS, in his capacity as Principal of Rickover Junior High School,<br><br>Plaintiffs,<br><br>vs.<br><br>REPUBLIC FRANKLIN INSURANCE COMPANY, an Ohio corporation,<br><br>Defendant. | No. 02 C 5250<br>Judge Joan H. Lefkow |

## MEMORANDUM OPINION AND ORDER

On June 14, 2002, plaintiffs, Board of Education of the Community Consolidated School District No. 168, Cook County, Illinois ("School District"), Thomas Ryan, in his individual capacity as Superintendent of the School District ("Ryan"), and Rudy Williams, in his capacity as Principal of Rickover Junior High School ("Williams") (collectively "plaintiffs"), filed this action in the Circuit Court of Cook County, Illinois, Chancery Division, seeking a judgment declaring that defendant, Republic Franklin Insurance Company, an Ohio corporation ("Republic"), was obligated to defend the plaintiffs against a complaint filed with the Cook County Commission on Human Rights ("Human Rights Commission"). On July 24, 2002, after complying with Local Rule 81.2, Republic removed the case to this court on diversity of citizenship grounds. Before the court are the parties' cross motions for summary judgment.

Plaintiffs are citizens of Illinois. Republic is an Ohio corporation with its principal place of business in both Ohio and New York. The amount in controversy exceeds $75,000. The court, therefore, has jurisdiction over the claims pursuant to 28 U.S.C. § 1332(a)(1). For the reasons set forth below, plaintiffs' motion is denied while Republic's motion is granted.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On cross-motions for summary judgment, the court must consider the merits of each motion and assess the burden of proof that

each party would bear on an issue at trial. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).

## FACTS[1]

Republic wrote insurance policy CPP2008301 to the School District, with effective dates of June 4, 1999 to June 4, 2002. (Facts ¶ 6.) The policy required plaintiffs to notify Republic "as soon as practicable" after either "an offense which may result in a claim" or if a "suit" is brought against any insured. (Joint Ex. A.)

On November 3, 2000, Anne Burgin ("Burgin") attempted to enroll her children at Rickover Junior High School. (Facts ¶ 9.) Previously, the children had been denied access to the school allegedly because the Burgins had no fixed address within the school territory. (Facts ¶ 8.) On November 6, 2000, following intervention by counsel for the Burgins, the Burgin children were allowed to attend the school. (Facts ¶ 10.)

On November 22, 2000, Burgin filed a Complaint with the Human Rights Commission against the School District, Ryan and Williams. (Facts ¶ 7.) Burgin alleged that Ryan and Williams discriminated against her and her family based on their race and housing status. (*Id.*) The Complaint contained the following allegations:

> (a) During the 1999-2000 school year, the Burgins were residents of Sauk Village and the[ir] children attended Rickover Junior High School, which is part of the District;
> (b) In April, 2000, the Burgins were evicted from their rental home. Since that time and until the filing of the Human Rights Complaint, they were without a fixed residence;
> (c) In the fall of 2000, Anne Burgin again enrolled her children at Rickover;
> (d) Burgin alleges that the District affirmatively misrepresented the residency requirements of the Illinois School Code;

---

[1]The facts as set forth herein are taken from the agreed statement of facts the parties jointly filed.

3

(e) On October 23, 2000, Principal Williams issue[d] letters to the Burgin children advising them that they were not residents and could not come to school the next day. Anne Burgin then spoke to Williams, and was advised to speak with Superintendent Ryan. Ryan confirmed that the children could not attend the school;

(f) Ryan and Williams continued to deny them the right to attend school for nine days, and failed to advise them of the availability of an ombudsperson or of free or low cost legal services, as required by the Illinois School Code.

(Facts ¶ 8.) For relief, the Complaint sought (1) "compensation for lost educational services and benefits;" (2) "broad injunctive relief to stop the alleged discriminatory actions of the School District and its employees" and (3) "damages in an amount sufficient to make us whole for the injury we have suffered and to deter further unlawful discrimination, attorneys [sic] fees and costs, and such other relief as the Commission deems appropriate." (Joint Ex. B ¶ 7.)

On December 5, 2000, the Human Rights Commission advised the School District of the Complaint. (Facts ¶ 13.) That notice stated that a "verified response to the allegations of the complaint is due to be filed with [the Human Rights Commission] within 30 days of receipt of this letter. FAILURE TO FILE A TIMELY VERIFIED RESPONSE MAY RESULT IN AN ORDER OF DEFAULT BEING ENTERED AGAINST YOU." (Facts ¶ 13.) The December 5, 2000 letter further advised that

> If, upon a completion of the investigation, the Commission determines there is substantial evidence of a violation of the Human Rights Ordinance, and no settlement of the case has been reached, the Commission will conduct a hearing, or in some cases, the matter may be filed in court.

(*Id.*)

On approximately January 31, 2001, the School District, by its attorneys, filed a Verified Response to the Complaint, along with a position statement. (Facts ¶ 14.) The response and position statement stated that the Burgin Complaint was factually inaccurate. (*Id.*) Moreover,

4

the position statement denied that the Human Rights Commission had jurisdiction over the School District. (Facts ¶ 14.) The Complaint was assigned to investigator John O'Connell ("O'Connell"), who conducted an investigation and issued a report on November 1, 2001. O'Connell recommended that the Commission assign Burgin's Complaint to a hearing officer. (Facts ¶ 18.) On January 24, 2002, the Commission assigned the Complaint to Hearing Officer Richard J. Gonzalez. (*Id.*)

On February 6, 2002, plaintiffs gave Republic notice of the Burgin claim and requested coverage. (Facts ¶ 20.) On March 11, 2002, Republic denied coverage for the claim. (Facts ¶ 21.) Republic stated in part that "[w]e are denying coverage to you under your policy as a result of your failure to timely report the claim against the district." (*Id.*)

## DISCUSSION

Plaintiffs seek a declaration that Republic has an obligation to defend and indemnify them with respect to the Burgin claim, and argue that summary judgment should be granted in their favor based on the language contained in the insurance policy. Republic, while conceding that plaintiffs could have been covered under the "Commercial General Liability Form" portion of the policy issued, argues that summary judgment is appropriate in its favor because the plaintiffs failed to properly notify it of either the "occurrence" or "suit" "as soon as practicable."

Under Illinois law,[2] a notice of suit provision in an insurance policy "is not a mere technical requirement for the convenience of the insurer, but is a valid condition precedent to the

---

[2]Neither party addresses what law governs this diversity action, so the court will apply Illinois law. *See, e.g., Wood* v. *Mid-Valley Inc.*, 942 F.2d 425, 426 (7th Cir. 1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal courts sits.").

triggering of the insurer's contractual duties." *Northbrook Prop. & Cas. Ins. Co. v. Applied Sys., Inc.*, 313 Ill. App. 3d 457, 464, 729 N.E. 2d 915, 920-21 (2000). "Where the insured fails to comply with a notice provision, the insurer will be relieved from its duties to defend and indemnify under the policy." *Id.*, 729 N.E. 2d at 921. Illinois courts treat notice provisions which call for notice "as soon as practicable" to require that such notice be made within a reasonable time period. *State Security Ins. Co. v. Burgos*, 145 Ill. 2d 423, 431, 583 N.E. 2d 547, 551 (1991); *Northbrook Prop. & Cas. Ins. Co.*, 313 Ill. App. 3d at 465, 729 N.E. 2d at 921. This analysis requires examination of the facts and circumstances of each particular case. *Id.*, 583 N.E. 2d at 551; *Northbrook Prop. & Cas. Ins. Co.*, 313 Ill. App. 3d at 465, 729 N.E. 2d at 921. Normally the question of whether an insured has provided its insurer sufficient notice is a question of fact, although it may be resolved as a matter of law when, as here, the parties do not dispute the underlying material facts. *Northbrook Prop. & Cas. Ins. Co.*, 313 Ill. App. 3d at 465, 729 N.E. 2d at 921; *Jones v. Universal Cas. Co.*, 257 Ill. App. 3d 842, 853, 630 N.E. 2d 94, 102 (1994).

Plaintiffs concede delay from the filing of the Burgin Complaint with the Human Rights Commission (November 22, 2000) to the notification of Republic (February 6, 2002). This passage of time, however, is not an absolute bar on a claim so long as the delay was justified. *Northbrook Prop. & Cas. Ins. Co.*, 313 Ill. App. 3d at 465, 729 N.E. 2d at 921; *American Country Ins. Co. v. Efficient Constr. Corp.*, 225 Ill. App. 3d 177, 181, 587 N.E. 2d 1073, 1075 (1992). "Of primary importance in this regard is the insured's reason for not providing notice within the period of delay at issue." *Northbrook Prop. & Cas. Ins. Co.*, 313 Ill. App. 3d at 465-

66, 729 N.E. 2d at 921. Illinois courts assess the validity of an insured's reasons by considering four factors,

> (1) the specific language of the policy's notice provision; (2) the degree of the insured's sophistication in the world of commerce and insurance; (3) the insured's awareness that a "lawsuit" as defined under the terms of the policy has taken place; and (4) once this awareness arises, the insured's diligence and reasonable care in ascertaining whether policy coverage is available.

*Id.* at 466, 729 N.E. 2d at 922. In addition to analyzing the reasonableness of the insured's proffered reason, Illinois courts also consider whether the delay prejudiced the insurer. *Id.,* 729 N.E. 2d at 922 ("Prejudice is merely a factor in assessing the reasonableness of the notice.").

Plaintiffs' excuse for any delay is that they believed notice of the Burgin Complaint needed to be given only after the Complaint had been sent to a hearing officer. Plaintiffs submit that only at that point did the Complaint became adversarial. Applying this excuse to the four pronged test above, factor two cuts against plaintiffs, as a school district is represented by counsel and cannot be fairly characterized as unsophisticated in the world of commerce and insurance. While plaintiffs maintain that the person responsible for notifying Republic of the Complaint had no experience with insurance contracts, it cites no case holding that the sophistication of employees is relevant. The court rejects any such suggestion. Factor four, however, would appear to support plaintiffs, as they notified Republic of the Complaint on February 6, 2002, and the Complaint was sent to a hearing officer on January 24, 2002. Plaintiffs' view is that the Complaint was not a "suit" under the terms of the policy until it was sent to the hearing officer. Thus, plaintiffs certainly did not unduly delay from the point in which they believed they had to give notice (January 24) until that notice was given (February 6).

Factors one and three are related and will be addressed together. In essence, plaintiffs maintain that based on the policy's language, they believed that coverage would not be afforded until the Complaint was filed with a hearing officer. Illinois courts allow a belief of "non-coverage" to excuse delay in providing notice where "the insured . . . acted as a reasonable person would have acted under the circumstances." *Northbrook Prop. & Cas. Ins. Co.*, 313 Ill. App. 3d at 467, 729 N.E. 2d at 923 ("[A]n insured's belief of non-coverage under a policy may be an acceptable excuse [for delay in notice] where the insured, acting as a reasonably prudent person, believed the occurrence or lawsuit was not covered by the policy."); *see also, Farmers Auto Ins. Ass'n v. Hamilton*, 64 Ill. 2d 138, 142, 355 N.E. 2d 1, 3 (1976) (notice of occurrence); *Amerisure Ins. Co. v. Laserage Tech. Corp.*, 2 F. Supp. 2d 296, 305 (W.D.N.Y. 1998) (applying Illinois law; notice of suit). Plaintiffs argue they reasonably believed that the Burgin Complaint was not covered under the policy until it was assigned to a hearing officer. Plaintiffs rely on language contained in both the notice of occurrence and notice of suit provisions to support their view.

The notice of occurrence provision in the policy states that "You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim . . . ." The policy defines "occurrence" as "an accident," which plaintiffs submit they reasonably believed the Burgin Complaint was not. Moreover, the policy does not define "offense," and plaintiffs again maintain they reasonably determined that when filed and investigated the Burgin Complaint did not constitute an "offense."[3]

---

[3]Plaintiffs argue they are to be afforded discretion in determining whether the Burgin Complaint fell within the coverage of the policy. Initially, the court is presented with nothing to suggest that affording plaintiffs discretion
(continued...)

8

Republic does not respond to the plaintiffs' interpretation of the notice of occurrence provisions, nor can the plaintiffs' view be realistically referred to as unreasonable. The policy provisions require that notice be filed after an "occurrence" or "offense." Occurrence is specifically defined in the policy language as "an accident," and not viewing the Burgin incident as an "accident" is reasonable as a matter of law. Moreover, Republic presents no persuasive ground to suggest that an interpretation of the policy which views the Burgin Complaint as not being an "offense"--a term not defined in the policy--is unreasonable. Thus, plaintiffs' belief that it was not required to notify Republic under the "notice of occurrence provision" was reasonable. This factor supports plaintiffs' view that any delay in notification was justified, at least with respect to the notice of occurrence provision.

The question is closer with respect to the notice of suit provision in the policy. The provision requires notice "as soon as practicable" after "a claim is made or 'suit' is brought against any insured." Section V(16) of the policy defines suit as "a civil proceeding in which damages because of . . . 'personal injury' . . . to which this insurance applies are alleged."[4]

---

[3](...continued)
in this regard is different from determining whether their belief of non-coverage was reasonable. More to the point, however, is that the cases plaintiffs rely on for the concept of discretion involved excess insurers, not a primary insurer, which Republic is here. *E.g., Atlanta Int'l v. Checker Taxi*, 214 Ill. App. 3d 440, 574 N.E. 2d 22 (1991); *Hartford v. Rush-Presbyterian*, 231 Ill. App. 3d 143, 595 N.E. 2d 1311 (1992). The court agrees with Republic that excess insurance policies have different purposes than primary policies.

[4]Personal injury is defined in the policy as including,

[M]ental anguish, shock or humiliation; other than bodily injury, arising out of one or more of the following offenses
***
6. Discrimination
   As used in this form, discrimination means the act of differentiation based on age, race, color, sex, religion, national origin, physical handicap or sexual preference which violates any applicable federal, state or local statute which pertain to discrimination.

9

Moreover, the definition of suit specifically includes arbitration in which damages for bodily injuries are asserted or "[a]ny other alternative dispute resolution proceeding in which such damages . . . are claimed . . . ." Plaintiffs submit that the Burgin Complaint initially only sought non-monetary relief, and that they were not required to give Republic notice until the Burgins sought monetary relief. This, however, is plainly incorrect. The Burgin Complaint stated that it sought, among other things, "compensation for lost educational services and benefits" and "damages in an amount sufficient to make us whole for the injury we have suffered and to deter further unlawful discrimination, attorneys [sic] fees and costs, and such other relief as the Commission deems appropriate."[5] (Joint Ex. B. ¶ 7.) Thus, plaintiffs' argument on this ground must be denied.[6]

Next, plaintiffs cite cases which have concluded that conciliatory efforts by the Illinois Department of Human Rights prior to the assignment of a complaint for hearing are investigatory in nature and not adjudicatory. *See Pinkerton Sec. & Investigation Servs. v. Illinois Dep't of Human Rights*, 309 Ill. App. 3d 48, 54, 722 N.E. 2d 1148, 1152-53 (1999); *Jabbari v. Illinois Human Rights Comm'n*, 173 Ill. App. 3d 227, 233, 527 N.E. 2d 480, 483 (1988). From this, plaintiffs posit that if the proceedings were not adversarial, they could not be a suit as defined under the policy. Plaintiffs believe that only after the Complaint was sent to a hearing officer could it be viewed as adversarial.

---

[5]There is no dispute that the Cook County Human Rights Commission is empowered to award damages. In the ordinance creating the Commission, which is attached as exhibit A to Republic's reply brief, the forms of relief include an order "to pay actual damages, as reasonably determined by the Commission, for injury or loss suffered."

[6]In their reply in support of summary judgment plaintiffs argue that the Burgins said they would seek damages only after conciliation failed. Plaintiffs provide no citation to the record to support this view. Moreover, it would appear contradicted by the language contained in the Burgin Complaint itself.

10

Neither *Jabbari* nor *Pinkerton* are particularly insightful here. Both courts noted that actions involving the Illinois Department of Human Rights (not the Cook County Human Rights Commission) begin with a complainant filing a charge with the Department, at which point an investigation is undertaken (and possibly a fact-finding conference held) to determine if the Director should prepare and file a written complaint with the Illinois Human Rights Commission. *Pinkerton*, 309 Ill. App. 3d at 54, 722 N.E. 2d at 1152; *Jabbari*, 173 Ill. App. 3d at 231, 527 N.E. 2d at 482. In *Jabbari*, the plaintiff, a complainant who filed a charge of discrimination dismissed by the Department before a complaint was filed with the Illinois Human Rights Commission, argued that the procedures utilized by the Department in investigating and ultimately dismissing her charge of discrimination deprived her of due process because at her fact-finding conference she could not cross examine witnesses or compel production of documents, and after the conference she could not receive a transcript. 173 Ill. App. 3d at 231, 527 N.E. 2d at 482-83. The court rejected this argument, explaining that until a complaint is issued by the Department, the proceedings are only an investigation in which due process does not attach. *Id.* at 233, 527 N.E. 2d at 483. Similarly, in *Pinkerton*, the court did state that "[u]ntil a complaint is issued by the Department, the proceedings are investigatory and not adjudicatory," 309 Ill. App. 3d at 54, 722 N.E. 2d at 1153, but the issue in that case was whether a Notice of Default issued against Pinkerton was a final appealable order. *Id.* at 51, 722 N.E. 2d at 1150. Neither of these cases address anything resembling the issue here of whether plaintiffs reasonably believed that they were not required to provide notice to Republic until the Burgin Complaint was assigned to a hearing officer.

Moreover, plaintiffs' broad theory that they were not required to provide Republic notice while the Burgin Complaint was in its investigatory stage and during conciliation is not supported by the language of the policy. As stated above, the Burgins sought damages in their initial Complaint, and even though the parties were in conciliation, the policy requires notice even in alternative dispute resolution so long as damages are claimed. In addition, more fundamentally, plaintiffs have presented no persuasive reason why investigation of the claim excused them from providing notice to Republic. This appears at odds with the role of a primary insurer, who "normally investigates the facts of the occurrences and undertakes the defense . . . ." *Atlanta Int'l Ins. Co.* v. *Checker Taxi Co.*, 214 Ill. App. 3d 440, 443, 574 N.E. 2d 22, 25 (1991). And while plaintiffs maintain during this period that the proceedings were not adversarial, they nevertheless saw the need to hire outside counsel to represent their interests. When a complaint is filed seeking damages and the failure to file an answer would result in an order of default being entered, thereby causing the insured to feel compelled to acquire counsel to represent its interests in the proceedings, it is unreasonable to suggest that a "suit" was not filed under the terms of the policy here because the claim was being investigated or attempts were being made to come to some sort of preliminary settlement. This factor weighs against the plaintiffs.

Last, addressing the final factor of prejudice, Republic argues that it was prejudiced by delay in providing notice because it was denied the advice of counsel of its own choosing and was denied an opportunity to investigate the matter and settle it at lower indemnification and defense costs. While finding Republic's first argument unpersuasive, the court sees some merit to the second suggestion that Republic may have been prejudiced by the inability to resolve this case earlier. As plaintiffs concede, "cases before the Cook County Commission on Human

Rights typically settle before they go to hearing." (Pl.'s Mot. at 3.) Republic, if it had been properly notified, may have investigated and ultimately decided that the cost effective way to handle the Complaint was to settle it initially through the conciliation process. Instead, it was not afforded notice and is expected to pay the legal fees incurred by plaintiffs. This amount is substantial enough to place this case above the jurisdictional threshold amount for diversity cases. If Republic had been promptly notified of the claim, it may have decided a quick handling of the case would have been the most cost effective measure. Thus, while the showing of prejudice is not extreme, this is but one factor and does weigh in Republic's favor.

Weighing all the above factors, the court concludes that plaintiffs' delay in notifying Republic of the Burgin Complaint was unreasonable and violated the notice of suit provision contained in the insurance policy between the two parties. Accordingly, Republic is not required to indemnify nor defend the plaintiffs with regard to expenses incurred in the Burgin Complaint.

## CONCLUSION

For the reasons stated above, plaintiffs' motion for summary judgment is denied [#8] while Republic's motion for summary judgment is granted [#10]. The clerk is directed to enter judgment in favor of the defendant. All future dates, including the October 20, 2003 trial date, are stricken. This case is terminated.

Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Date: October 3, 2003

13